IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ORN SAYASENG,

                    Petitioner,

      v.

Bruce SCOTT, Warden, Northwest ICE
Processing Center; Cammilla
WAMSLEY, Enforcement and Removal
Operations, Seattle Field Office Director,
U.S. Immigration and Customs
Enforcement; Kristi NOEM, Secretary,
U.S. Department of Homeland Security;
U.S. DEPARTMENT OF HOMELAND
SECURITY; Todd LYONS, Acting
Director and Senior Official Performing
Duties of Director of ICE; U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                    Respondents.

2:26-cv-00476-RAJ

ORDER GRANTING IN PART
HABEAS PETITION

## I.     INTRODUCTION

THIS MATTER comes before the Court on Petitioner Orn Sayaseng's Complaint and Petition for Writ of Habeas Corpus and Injunctive Relief Under 28 U.S.C. § 2241 (the "Petition," Dkt. # 1). Petitioner seeks immediate release, injunctive relief against re-detention without due process, and protection against third-country removal. Dkt. # 1 ¶¶ 109–23. Petitioner previously moved for a temporary restraining order ("TRO"), which

ORDER – 1

this Court granted and subsequently extended.  Dkt. ## 7, 12, 16.  Respondents[1] oppose Petitioner's requests for relief.  Dkt. ## 14–15.

For the reasons set forth below, the Court **GRANTS IN PART** the Petition.[2]

## II.     BACKGROUND

Petitioner Orn Sayaseng was born in Laos in 1974.  Dkt. # 15-1 at 2.  Petitioner's father was a member of the military during the Vietnam War.  Dkt. # 7-3 ¶ 2; Dkt. # 18 at 2.  Following the establishment of Lao People's Democratic Republic in 1975, Petitioner and his family went into hiding due to their fear that Petitioner's father risked persecution by the newly-established government.  Dkt. # 7-3 ¶ 2.  In 1979, the family fled Laos and entered Thailand, where they lived in a refugee camp for several years.  Dkt. # 7-3 ¶ 2; Dkt. # 7-4 ¶ 2.  At some point, Petitioner's family was relocated to the Philippines.  Dkt. # 7-4 ¶ 2.  Ultimately, Petitioner was admitted into the United States as a refugee in September of 1986 or 1987.  *See* Dkt. # 1 ¶¶ 18–19 (indicating entry to United States in 1987, and Washington State in September 1987); Dkt. # 15-1 at 3 (indicating admission to United States as a refugee on September 17, 1986).

In 1995, Petitioner pled guilty to the offense of Rape in the Second Degree in the Superior Court of Washington.  Dkt. # 7-4 ¶ 7; Dkt. # 15-1 at 3.  Petitioner states that his attorney did not warn him that a plea of guilty would affect his immigration status.  Dkt. # 7-4 ¶ 7.  Notably, Laos citizenship law provides that persons who leave Laos and reside in another country for more than seven years forfeit their Laos nationality, rendering U.S.

[1]   The Petition names Bruce Scott (Warden, Northwest ICE Processing Center) as a Respondent, but he is not represented by the U.S. Attorney's Office, which filed the Return Memorandum in this case on behalf of the remaining Respondents.  *See* Dkt. # 14 at 1 n.1.

[2]   Petitioner requests an evidentiary hearing on his prolonged detention claim.  *See* Dkt. # 1 ¶ 108 (citing *Owino v. Napolitano*, 575 F.3d 952, 956 (9th Cir. 2009)).  The Court declines this request because the record is sufficient for adjudication of the Petition.  *See Owino*, 575 F.3d at 954 ("holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER – 2

deportees stateless. Dkt. # 17-4 ¶¶ 5, 17. Petitioner was sentenced to 51 months' incarceration, and served his sentence in Clallam Bay, Walla Walla, and Connell, Washington. Dkt. # 7-4 ¶ 8; Dkt. # 15-2 at 4; Dkt. # 15-3. Petitioner was thereafter released into immigration custody in December 1997 and issued a Notice to Appear charging him as subject to removal pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") on the basis of his conviction. Dkt. # 7-4 ¶ 9; Dkt. # 15-3.

On October 14, 1998, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Laos. Dkt. # 15-4. However, Petitioner argues that his 1995 charge is "no longer grounds for removal under federal law." Dkt. # 1 ¶¶ 21, 52–53 (citing *Khan v. Barr*, 800 F. App'x 539, 540 (9th Cir. 2020) (unpublished)). Petitioner appealed his removal order to the Board of Immigration Appeals ("BIA") on November 12, 1998. Dkt. # 15-1 at 3. The BIA rejected Petitioner's appeal on November 16, 1998. *Id.* On September 17, 1999, Petitioner was released from immigration custody on an Order of Supervision ("OSUP"). *Id.* at 4. Respondents indicate that Petitioner was released at that time due to immigration authorities' inability to secure a travel document to Laos and determination that there was no significant likelihood of removal in the reasonably foreseeable future. Dkt. # 11 ¶ 8.

For 26 years, Petitioner has built a productive life in the United States, where he has lived for nearly four decades. Since his conviction in 1995, Petitioner has incurred no additional criminal charges. Dkt. # 7-4 ¶ 16. Petitioner obtained his work authorization and gained employment as a machinist in 2011. *Id.* ¶ 17. Petitioner also started a family with his partner of 20 years; his daughter is eighteen years old and is a U.S. citizen. *Id.* ¶ 18. Petitioner has complied with all required check-ins since his release from immigration officials in 1999. *Id.* ¶ 20.

On October 2, 2025, Petitioner completed his regular 8-month check-in with U.S.

ORDER – 3

Immigration and Customs Enforcement ("ICE") in Tukwila; he was instructed to fill out visa application forms for Laos in order to remain out of detention and was then directed to the Intensive Supervision Appearance Program ("ISAP") to complete his check-in. Dkt. # 1 ¶ 31; Dkt. # 7-4 ¶ 21. Petitioner returned the visa application to ICE on October 28, 2025, and was instructed to come back in the following weeks for additional check-ins. Dkt. # 7-4 ¶ 22. At one of his follow-up check-ins, Petitioner was provided with a GPS monitoring device. *Id.* ¶ 23. On December 23, 2025, Petitioner received a text message from ISAP indicating that there was an issue with his GPS and requesting that he come in. *Id.* ¶ 24. When Petitioner arrived, he was arrested and re-detained. *Id.* ¶¶ 24–25. Petitioner recalls that the immigration officers informed him that he was being arrested because his appeal had been denied. *Id.* Several days after his re-detention, Petitioner was provided with a Notice of Revocation of Release, informing him that his OSUP had been revoked and that "[a] determination was made that there is now significant likelihood of [Petitioner's] removal from the U.S. in the foreseeable future." Dkt. #15-6. The Notice provided that Petitioner would be "promptly be afforded an informal interview" to submit evidence and respond to the reasons for revocation. *Id.* Petitioner was provided no such interview. Dkt. # 1 ¶ 33; Dkt. # 17 at 3.

On January 27, 2026, ICE's Office of Enforcement and Removal Operations ("ERO") received a "laissez-passer" travel document issued by Laos and naming Petitioner. Dkt. # 11 ¶ 12; Dkt. # 15-8. The pass is valid for 90 days from the date of issue. *Id.* On February 9, 2026, Petitioner filed the Petition commencing this action; Petitioner filed the Motion for TRO two days later. Dkt. ## 1, 7. The Court granted Petitioner's Motion for TRO on February 13, 2026, and Petitioner was released from custody the following day; the Court subsequently extended the TRO on March 2, 2026. Dkt. ## 12, 13, 16. On February 23, 2026, Petitioner filed an Emergency Motion to Stay Removal in

ORDER – 4

the Tacoma Immigration Court pending adjudication of his Motion to Reopen and Alternative Request for *Sua Sponte* Reopening.  Dkt. ## 17-5, 17-6.  The Immigration Court stayed Petitioner's deportation on February 27, 2026.  Dkt. # 17-1 ¶ 5.

As set forth in the Petition, Mr. Sayaseng claims that: (1) Respondents violated their governing regulations in revoking Petitioner's conditions of release, in violation of 8 C.F.R. § 241.13(i)(3) and the Administrative Procedures Act; (2) Petitioner's detention violates due process, *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231; and (3) his removal to a third country would violate the Fifth Amendment, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), and implementing regulations.  Dkt. # 1 ¶¶ 109–23. As such, the Petition requests Petitioner's immediate release, along with injunctive relief prohibiting Respondents from: (1) re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal; (2) re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures; and (3) removing Petitioner to any country other than Laos without following prescribed procedures.  *Id.* at 30. Petitioner also seeks costs and fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. *Id.*

### III.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  The district courts' habeas jurisdiction includes challenges to immigration-related detention.  *Zadvydas*, 533 U.S. at 687.  A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The petitioner bears the burden of proof by a preponderance of the evidence.  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

ORDER – 5

In addition, "[w]here habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, Case No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020)).   Plaintiffs seeking injunctive relief must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## IV.    DISCUSSION

### A.    Petitioner's Request for Relief is Not Moot

As a threshold matter, Respondents contend that Petitioner's challenge to his detention was mooted by his release from custody on February 14, 2026. Dkt. # 14 at 6. Respondents neglect to acknowledge, however, that Petitioner's release was pursuant to a time-limited TRO. *See* Dkt. ## 12, 16. As such, without this Court's adjudication of Petitioner's requests for further injunctive relief related to his re-detention, Petitioner faces potential recurrence of the harm he has alleged. *See Ortiz Martinez v. Wamsley*, No. 2:25-CV-01822-TMC, 2025 WL 2899116, at *3–4 (W.D. Wash. Oct. 10, 2025) (rejecting government's argument that petitioners' detention claims were mooted by release pursuant to TRO); *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *3 n.5 (C.D. Cal. Sept. 26, 2025) (same; describing government's argument to contrary as

ORDER – 6

"strain[ing] credulity"); *Joudi-Haghighi v. Noem*, No. 5:25-CV-03315-SSS-MAA, 2026 WL 413576, at *2–3 (C.D. Cal. Jan. 8, 2026) (same).  The Court will therefore proceed to consider Petitioner's underlying writ of habeas corpus as set forth in the Petition.

**B.   Respondents Violated Due Process and Applicable Regulatory Requirements**

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).  Courts in this District and elsewhere regularly apply the *Mathews* test to find that due process requires pre-deprivation notice and a hearing before a noncitizen's order of supervision is revoked and the noncitizen is re-detained.  *Yang v. Scott*, No. 2:26-CV-00469-JNW, 2026 WL 632661, at *3 (W.D. Wash. Mar. 6, 2026) (collecting cases).  This Court reaches the same conclusion here.

Separately, applicable implementing regulations impose specific procedural

ORDER – 7

requirements with respect to ICE's revocation of a noncitizen's supervised release. Specifically, ICE may revoke a noncitizen's release if the noncitizen violates the conditions of their release, 8 C.F.R. § 241.13(i)(1), or if a change in circumstances creates a significant likelihood of removal in the reasonably foreseeable future, *id*. § 241.13(i)(2). "Upon revocation" of release, the noncitizen must be notified of the reasons for the revocation and afforded "an initial informal interview promptly after his or her return" to custody to "respond to the reasons for revocation" and "submit any evidence or information" in opposition. *Id*. § 241.13(i)(3). The noncitizen's "revocation custody review" is to include "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

Respondents failed to comply with these regulations here. Petitioner declares that, upon his re-arrest, immigration officers informed him only that he was being arrested because his appeal had been denied. Dkt. # 7-4 ¶¶ 24–25. Given that Petitioner's BIA appeal was rejected in November 1998, a year prior to his initial release, this explanation hardly reflects "changed circumstances." 8 C.F.R. § 241.13(i)(2). Respondents otherwise contend that Petitioner's OSUP was revoked "with notice provided," citing to the Notice of Revocation of Release. Dkt. # 14 at 3 (citing Dkt. # 11 ¶ 9; Dkt. #15-6). But that Notice—which was not provided to Petitioner until several days *after* his re-detention— offers the following justification: "A determination was made that there is now significant likelihood of your removal from the U.S. in the foreseeable future." Dkt. #15-6. In their Response to the Petition, Respondents offer "changed circumstances, including Laos's increased cooperation in repatriations," as the basis for the Government's determination that "removal was now significantly likely." Dkt. # 14 at 3. But this language does not appear in the Notice of Revocation of Release—and even if it had, it would only constitute "boilerplate language that gives [Petitioner] no information about the factual basis for

ORDER – 8

revoking his OSUP and no basis to prepare a meaningful response."  *Yang*, 2026 WL 632661, at *4 (Notice of Revocation of Release stating that "the country of Laos has since changed their internal policy regarding the issuance of travel documents for its citizens, and there is now a significant likelihood of your removal from the U.S. in the foreseeable future" failed to satisfy requirements imposed by regulations and due process); *see also, e.g.*, *Saengphet v. Noem*, 3:25-cv-2909-JES-BLM, 2025 WL 3240808, at *6–7 (S.D. Cal. Nov. 20, 2025) (same conclusion with respect to "conclusory" Notice providing that ICE "has determined that [noncitizen] can be expeditiously removed from the United States pursuant to an outstanding order of removal against [the noncitizen]"); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025) ("Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition.").

Additionally, Respondents do not contest that they failed to provide Petitioner with a prompt interview as required by 8 C.F.R. § 241.13(i)(3). *See generally* Dkt. # 14. Indeed, there is no indication from Respondents that Petitioner was afforded an interview at any point from the time he was re-detained on December 23, 2025 until his release on February 14, 2026 pursuant to this Court's order. At this juncture, it is "too late to remedy this deficiency," as "the period for a 'prompt' interview has long passed." *See Yang*, 2026 WL 632661, at *4 (collecting cases).

Respondents note that "the Government promptly obtained valid travel documents on January 27, 2026," in support of their argument that "Petitioner's detention was brief and removal was clearly foreseeable." Dkt. # 14 at 7. But this *post-detention* evidence does not obviate Respondents' obligation to effectuate Petitioner's detention "in a manner

ORDER – 9

that comports with due process." *Yang*, 2026 WL 632661, at *4 (quoting *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025)). Moreover, the Immigration Court's February 27, 2026, stay of Petitioner's deportation "greatly diminishes the Government's interest in continued detention, as it is unclear when or whether removal will occur." *Id.*; *see* Dkt. # 17-1 ¶ 5.

Based on the foregoing, the Court finds that Respondents violated due process and their own regulations in revoking Petitioner's release and re-detaining him without notice and a hearing.

### C.    Injunctive Relief Against Future Re-Detention Is Necessary

Because Petitioner was previously released pursuant to the Court's TRO, the Court must consider the appropriate remedy with respect to future re-detention. Here, the Court concludes that enjoining future re-detention of Petitioner without notice and an opportunity to be heard is necessary. Petitioner has demonstrated a "concrete risk of re-detention," as Respondents "hold a travel document to Laos bearing his name." *Yang*, 2026 WL 632661, at *5. Petitioner is "from a country being targeted with increased removal efforts, and the Government has already unlawfully re-detained him once without due process," resulting in irreparable injury. *Id.* In this context, a noncitizen petitioner's harms cannot be redressed by seeking monetary damages from the Government. *Id.* Petitioner has lived in the United States for nearly four decades, and has spent the last 26 years abiding by the conditions of his OSUP, maintaining steady employment, and providing for his family. Dkt. # 1 ¶¶ 80–81. The balance of hardships therefore favors Petitioner over any "burden on Respondents of providing constitutionally adequate process." *Yang*, 2026 WL 632661, at *5. Finally, the public interest is served by the assurance of the Government's compliance with due process and its regulations. *Id.*

Accordingly, the Court prohibits Respondents from re-detaining Petitioner without

ORDER – 10

advance notice and an opportunity to be heard in compliance with 8 C.F.R. § 241.13(i) and any other applicable statutory and regulatory procedures.  The Court rejects Petitioner's request to extend the conditions set forth in the TRO for "no less than four months," including the provision allowing Petitioner to voluntarily depart the United States; these requirements are not supported by the legal authority upon which Petitioner relies.  Dkt. # 17 at 10 (citing *Padilla v. United States Immigr. & Customs Enf't,* 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)); *see Yang*, 2026 WL 632661, at *5.

### D. The Court Declines to Resolve Petitioner's *Zadvydas* Claim

Petitioner separately claims that his detention violates *Zadvydas* and 8 U.S.C. § 1231 because his cumulative detention exceeds the presumptive six-month limit and because there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; Dkt. # 1 ¶¶ 64–79; 115–18.  The Court declines to reach this issue in light of the Immigration Court's stay of Petitioner's removal.  *Yang*, 2026 WL 632661, at *5.  Additionally, the relief Petitioner seeks in connection with this claim overlaps with the relief already afforded by the Court in resolving Petitioner's due process and regulatory claims.  *See id*.

### E. The Court Denies Petitioner's Requests to Enjoin Third-Country Removal, Reopen His Immigration Proceedings, and Stay Removal

Petitioner requests that the Court enjoin his removal to a country other than Laos without affording specific process, including written notice, a meaningful opportunity to raise a fear-based CAT claim, and either a requirement that Respondents move to reopen Petitioner's immigration proceedings or a meaningful opportunity for Petitioner to seek reopening himself.  Dkt. # 1 at 30.  Respondents submit that "[a]n injunction mandating reopening would impermissibly restrain 8 U.S.C. § 1231 operations, violating 8 U.S.C. § 1252(g)."  Dkt. # 14 at 8.  The Court notes, however, that Petitioner's requests for this

ORDER – 11

relief appear to be confined to his request for relief against third-party removal, and Petitioner further clarifies in his Traverse Reply that he is *not* asking this Court to mandate reopening. *See* Dkt. # 1 at 30; Dkt. # 17 at 4. The record in this case does not indicate that the Government has taken any steps to remove Petitioner to a third country. To the contrary, Respondents provide that "[r]emoval is planned to Laos, Petitioner's designated country, with valid Laotian travel documents obtained," and "[n]o third-country plan exists." *See* Dkt. # 14 at 8–9. Petitioner's third-country claims are therefore premature and unripe. *Yang*, 2026 WL 632661, at *6 (citing *Bui v. Scott*, No. 2:25-CV-02268-TMC, 2025 WL 3706796, at *1 n.1 (W.D. Wash. Dec. 22, 2025); *Uprety v. Bondi*, No. 2:25-CV-02443-JNW, 2026 WL 194227, at *5 (W.D. Wash. Jan. 26, 2026)).

For avoidance of doubt, and to the extent any live dispute persists regarding this Court's authority to mandate reopening or stay removal, the Court observes that "the immigration court has already granted [Petitioner's] emergency motion to stay his removal to Laos pending adjudication of his motion to reopen." *Yang*, 2026 WL 632661, at *5. Accordingly, Petitioner has already obtained the "essential relief" he seeks at this time with respect to these requests. *Id.* Petitioner therefore has no reason to request that this Court stay his removal or reopen his immigration proceedings—nor could this Court grant such relief, as these discrete actions are barred by 8 U.S.C. § 1252(g). *Id.* at *5–6.

## V.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Petition is **GRANTED IN PART**. Dkt. # 1.

2. Petitioner is to remain released from custody, subject to the conditions of his prior OSUP.

3. Respondents may not re-detain Petitioner unless Respondents provide Petitioner with: (a) at least 10 days' advance written notice of the basis for the proposed

ORDER – 12

re-detention; and (b) the opportunity to be heard before an immigration judge to determine whether re-detention is appropriate.

4. Petitioner may file a fee petition within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.  The parties must comply with the Court's meet and confer requirements prior to filing, and the Court takes no position at this time regarding whether such fee petition will be granted. The parties may file any fee petition within the deadlines set by the Equal Access to Justice Act.

5. All other requested relief is **DENIED** without prejudice, as set forth in this Order.

Dated this 10th day of April, 2026.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 13